Next case up is Maier v. Green Eyes, and we'll hear first from Mr. Davis. May it please the court, I'm Clay Davis and I represent Karine Maier, the widow of James Maier. I will speak for five minutes on the diversity jurisdiction issue, then Ms. Hashimi will speak for five minutes on the finality issue, then I'll take three more minutes on the negligence claim. It's our position that the district court committed error in its May 9th, 2019 order when it found that Defendant Jimenez's citizenship on the date of removal was established in the record in Florida. This court has previously stated that the party invoking the court's jurisdiction bears the burden of proving the existence of federal jurisdiction, and the court should resolve doubts and uncertainties regarding the existence of federal jurisdiction in favor of a non-moving party and in favor of remand. Courts frequently weigh the party's sworn statements or testimony to resolve questions of their citizenship. When considered with other evidence, the party's testimony can resolve uncertainty, and the removing party has a heavy responsibility to develop the record. And the Pelley's seem to understand this, and in their petition to reopen Discovery, they asserted they would depose Mr. Jimenez and or his daughter to confirm facts relevant to Mr. Jimenez's domicile at the time of removal. Yet they failed to depose Mr. Jimenez or even obtain an affidavit or a declaration from him. Canal and Shelley have cited no authority for allowing a family member such as Yamilay Jimenez, who's a stranger before the court, to testify in lieu of a party regarding his citizenship. It's our position that the declaration of Yamilay Jimenez lacks a proper foundation. She does not provide any street address or even a city where Mr. Jimenez lived on the date of removal, but only asserts generally he resides in Florida. But she never knows, but she never explains how she knows this to be true. Nowhere does she state that she's ever lived with her father or even visited him. We don't even know if she lives in Florida or whether she was living in Florida at any time in 2009 at the time of removal. For that matter, we don't know whether she was in contact with him in 2009. With all of the unique makeups of family units in this day and age, it can't be assumed that even a biological daughter would automatically know her father's place of residence ten years before. After being fired by Greeneyes, I'm sorry? Counsel, this is Lisa Branch. Yes, Your Honor. So are you saying that the only evidence that would have been acceptable to establish the citizenship of Mr. Jimenez is if Mr. Jimenez testified himself or provided a declaration? Your Honor, I'm saying that what would be necessary in this situation would be testimony from Mr. Jimenez establishing where he was in conjunction with other extraneous evidence. So if he does not provide any evidence on his own citizenship, then we don't have evidence of his citizenship? Well, not unless it is, Your Honor, I guess it is possible that if Ms. Viemele Jimenez had provided a proper foundation, this court might determine she could do so. But defendant has provided no authority that would allow a family member to stand in place of the party in question. May I proceed, Your Honor? Yes, always. Okay. After being fired by Greeneyes in February of 2009, Mr. Jimenez could have moved anywhere in search of another job, and he was apparently in Savannah, Georgia for an unknown period of time shortly before the time of removal. The affidavit which was drafted by Pele's counsel that Viemele never signed illustrates at least an attempt to lay a foundation. It would have had Viemele swear that she lived in the Miami area in close proximity to her father for the last number of years, and that she was in regular communication with him. Notably, no such statements appear in her declaration. There's also an obvious inconsistency about Mr. Jimenez's alleged medical condition. Viemele only swears that he suffered a stroke that's affected his ability to communicate. This casts doubts upon the claim that he's incapable of giving testimony or signing an affidavit, as many stroke patients are able to communicate despite having their ability to speak somewhat affected. Appellees have repeatedly attempted to shift their burden of proof to Ms. Meyer, and they've attempted to say that if it's only plausible that Jimenez was in Florida, then that's enough. But that's not the standard. Rather, appellants must make an affirmative showing and prove citizenship by a preponderance of the evidence. Therefore, we think this case should be remanded to the state court. At this time, Ms. Hashmi will speak. Good morning, Your Honor. This is Mary Hashmi for the plaintiff. The focus for this case... Counsel, counsel, if you would, courtroom deputy, would you please give the remainder of Mr. Davis' time to Ms. Hashmi on the opening please? Yes, Your Honor. All right, go ahead, Ms. Hashmi. Thank you, Your Honor. This is Mary Hashmi, and I'm passing the issue of finality from primarily on page 32-35 of Plaintiff Appellant's brief in case number 18-1. Counsel, counsel, sorry. This is Robert. I'm having a lot of trouble hearing you. I don't know if the other judges are as well. Do you mind speaking at least either louder or closer to the phone? Okay. Can you all hear me okay? That's a lot better. Thank you. Okay. Sorry about that. The district court's order from which this appeal is taken, Doctrine 332, was erroneous and an abuse of discretion for three reasons. First, the district court erred by finding that it lacked jurisdiction because that finding was contrary to this court's prior determination that there was no final order. Established precedent holds that when an appeal of a non... Counsel, this is Robert Lux. So let's say that I agree with you that the trial court should have reopened under the procedure as laid out in Barry and CSX and some of our other cases. Don't we still have an appellate jurisdiction problem? In other words, even if I think the district court got it wrong, how are we not still in the same problem we are under Ryan as we were in 2016 when a panel of this court dismissed? Well, first, Your Honor, on the third page of... I'm sorry. On page six of the order appealed from, the district court was erroneous when it said that it lacked the power or any mechanism by which to grant any relief... Again, counsel, let's say that I agree with you. In other words, let's say I think the trial court just got it terribly, horribly, no good wrong, and I think that it absolutely had the power to do something here. My question to you is not that. My question to you is don't we still have the same problem that you had in 2016 in that the order, the state of being is that there was a summary judgment adverse to you, and then you dismiss without prejudice, and that's still where it stands just as that's where it stood the last time. So a couple of things. This case does not offend Ryan. In Ryan, there was still a pending complaint in the district court, an open case against the one defendant in that case. What about... Counsel... What about White? It's not just Ryan, but it's White, too. Well, in the cases since Ryan, state treasurer versus Berry and construction aggregates, in those cases, there were impermissible attempts by the parties to manufacture appellate jurisdiction. Isn't that exactly what you guys did? Well, no, because in actuality, the dismissal order is an adverse judgment because the plaintiff also expressly asked for the entry of a final judgment for the purpose, express purposes of appealing... Yeah, but you can't have it both ways. That's the whole point. You can't have a quote-unquote final judgment, not that a district court can ever bless that, but a quote-unquote final judgment, and ask for a without prejudice dismissal so that just in case you all lose, you can refile. That's the whole point. But the practical effect is what controls here, and for practical purposes, the dismissals after the statute of limitations have long run in... So, but part of your... Because in Mesa, in footnote six, we dealt with exactly that argument. The government there made that exact argument that, hey, you know what, the statute of limitations has expired, so, you know, we don't know. And the response of the court is, we're really not the best party to decide that because there's tolling, and there's all sorts of exceptions to statute of limitations that we don't have a record for, and we're not the best to litigate in front of. And so, we don't think that is an exception to riot. Well, that's why... Right? And that's why this court in State Treasurer v. Berry said the proper course is to return to the district court, seek to reopen the case... And I agree, and I think that is the proper course, and I think the district court should have granted your motion and reopened. That's my own personal opinion, and not maybe... And I have no idea if it's shared by others. But we still are in the quagmire of appellate jurisdiction. How is the situation any different than it was the last time where the panel reviewed statute of limitation issues, reviewed the same arguments you made last time, reviewed the JETCO argument, and still found no jurisdiction under riot? Because the district court did, in actuality, in essence, enter a final judgment with the order appealed from, because it stated... The court has plenary power under Hardin v. Hayes to revise, reconsider, also amend any non-final order any time prior to final judgment, and the court determined, again, that the series of orders terminates litigation, and this... Let me... Counsel, let me ask you this. ...any time prior to final judgment, and so if you take a voluntary dismissal and come back 10 years later and, say, reopen and dismiss those voluntary dismissals that we had without prejudice, make them with prejudice now so we can appeal, that's... The court's got the authority to do that? Your Honor, I'm out of my time, and if I can please answer the question. You can. Well, the difference here is that we were still bouncing... You know, we were still speaking to the court. This court said there was not a final judgment. We went back to the district court, as was proper, and the district court... I'm sorry. I'm sorry. Counsel, I'm sorry. Y'all, I'm having a hard time connecting with y'all, and by y'all, I mean the attorneys this morning, so it's probably me. My question. My question is, if, as you just argued to us, the district court has authority to reopen any judgment before final judgment was entered, and if final judgment hasn't been entered because there was a dismissal without prejudice of some of the claims, then why would that not mean that a decade after the dismissal without prejudice, you could go on and say there's no final judgment. You still have the authority to reopen the case and dismiss these voluntary dismissals with prejudice, and therefore, we can appeal the underlying judgment because an appeal brings up all preceding orders. Right. And, Your Honor, because we were still appealing these prior orders and a series of orders, it was nothing was left, you know, stale for any amount of time, and this court doesn't have to... So where to apply a staleness for any amount of time limitation on your proposition? The problem is one thing the final judgment rule does is protect finality, and it regulates finality decisions, but if you have a no staleness rule, I'm not sure how any court is to follow that or how we're to judge it on appeal. Your Honor, this court in the Compton v. Mr. Chipp, Inc., is instructive. The plaintiff in that case was permitted to appeal a dismissal without prejudice that the plaintiff requested because the district court placed dismissed conditions, and that where the conditions, the practical effect of the dismissal, they automatically converted... No, that's very... You're playing a little fast and loose, Counsel. In LeComte, it was the conditions placed by the district court that essentially made its order a dismissal with prejudice. What you are saying is because you all waited long enough for the statute of limitations to expire, your actions caused this to ripen into a final judgment. That is a very, very different thing than LeComte. Well, Your Honor, the Supreme Court in Gillespie stated that it is impossible to form or to even contemplate an exact formula for finality, and with complex procedural histories such as this one, there were multiple parties with multiple states due to bankruptcy. Isn't that exactly why Ryan prohibits doing exactly what the plaintiff did in this case? I mean, isn't that exactly the point of Ryan, which is to say, we're going to draw a line that if there's an adverse judgment, and then you dismiss, and you do so without prejudice, that... But Ryan was not complex, Your Honor. Ryan involved one defendant and still had a complaint with jurisdictional allegations against that one defendant still pending when they appealed. That is very different than a two-year bankruptcy that is after summary judgment was partially granted prior to these dismissals. This case was tortured history, as the district court put it. Anything else, Kelsey? I'm not suggesting there should be. I'm just inquiring. If there were ever a case that if this court does find that we are in the finality trap rather than some exception, this is the case that should bring that under review. The harshness of Ryan that this... Members of this court have urged the court to re-look at and re-examine, and I will yield to Mr. Davis now. Thank you. Your Honor, the final part of our argument... Whoa, whoa, whoa, whoa. Have we heard from Mr. Saver? Not yet. Well, no, Your Honor. I thought your two minutes were saved for a reply to him. I didn't... It's... Usually, we have the appellant's counsel, and this is what the docket sheet I've got indicates. The appellant counsel makes their arguments, A and B, if they're two counsel, and then we hear from the appellee, and then you get two minutes' reply, which I would think would be an advantage to you. So let's hear from Mr. Saver first, and then you've got your two minutes of reply. Yes, Your Honor. Okay, Mr. Saver. Yes, Your Honor, this is Philip Saver, and I represent the appellees in this case. Just, I guess, to take the issues that were raised in the arguments in order. On the diversity question, this is a factual finding by the district court that has to be upheld if it's plausible from the record. We certainly put in evidence of Mr. Jimenez, his domicile in Florida in November 2009 when the removal was taken. We did attempt to depose Mr. Jimenez, as we put in the record. Mr. Jimenez has a medical condition that, we were told, makes it difficult for him to communicate. Instead, we got a declaration, a sworn declaration from the daughter. We provided that to the plaintiffs during the reopened discovery period. Counsel, the remedy here, let's assume I agree with the plaintiff and not you, the remedy here isn't to remand to the state court, right? Correct. The remedy would be to dismiss him as a party. Right, under Rule 21, right? Yes, as the plaintiff agreed in the first appearance of this case in 2015, there was a joint motion to dismiss Mr. Jimenez as not a necessary party. So I guess that is the end of that. If, in fact, you think that his citizenship finding is not plausible from the record, that would be the remedy. But we would say that the arguments that Mr. Davis raised have to do with credibility, but certainly we put in evidence of his driver's license history since 1999, which was a certified record from the state. As far as him being in Savannah, that was when he was incarcerated. Case law is that that's not your domicile. And there's a case that the district court cited called Molinas, where this court said that self-serving statements of one's domicile are often looked at with given little weight because of the credibility issues. And I think that that's what Mr. Davis was questioning was the credibility, which he did in the district court, and the district court found that he was a citizen of Florida, which confirms the existence of diversity jurisdiction. But yes, alternatively, he would be dismissed as not being a necessary party. Turning to the question of appellate jurisdiction, I think the key point, for purposes of where we are now, is that absolutely nothing has occurred since the previous dismissal of the appeal for lack of appellate jurisdiction, except that the plaintiff has filed a motion to reopen with the district court, which was denied. They claim that that denial of the motion is itself a final judgment, which I don't think stands up to logic, because it would mean that if the court granted the motion or denied the motion, it wouldn't matter. This is Robert Luck. I have to say, it is a mouthful. And it sort of falls into the head of, this just doesn't smell right, and so something has to be wrong. We have clearly said in multiple opinions that the appropriate way to handle this situation, if a plaintiff wants, is to go back and get a dismissal with prejudice, meaning that they aren't playing games to manufacture jurisdiction. They truly are getting rid of all other parties, and all that is left is the partial judgment that now ripens into a final judgment, and the appeals. Here, the district court said it couldn't do that. I tend to think that that's wrong. Again, I'm only speaking for myself, but I know what our case law has said on the subject. But I also tend to agree with you that it's not appealable. That seems to be somewhat wrong, and that seems to be that I'm missing something, because that generally isn't always the case. What am I missing? What am I not missing? And why are you right that the district court can be wrong, but there is absolutely no remedy for it? Let me address that. I think that you've articulated the issue very clearly. So the harshness of Ryan in this case is the result of the plaintiff's machinations. Ms. Hashemi said that the case has a tortured history, and it does. But the reason it has a tortured history is because the plaintiff has tried to manufacture jurisdiction, and then go back and find a way to repair the errors that were made. The Ryan rule has been around for a long time, and it's very clear that you cannot do what the plaintiff attempted to do here. So as far as the harshness of the result, all rules can be considered harsh, including the 30 days to file a notice of appeal or not filing a tolling motion within the proper time period. If it's a day late, if it's a week late, the appeal is gone. So one thing here is that the Ryan rule is clear. Another thing that is a concern is that the plaintiff did not simply dismiss a claim in order to take an appeal on a claim that was dismissed or that was granted summary judgment, but instead they dismissed their action without prejudice on Rule 41. There's the University of South Alabama case that the district court cited which states very clearly, and I'm quoting here, that voluntary dismissal renders the proceedings a nullity and leaves the parties as if the action had never been brought. So based on that, it would not be a remedy if the decision is to dismiss the remainder of the action without prejudice in order to be able to then appeal a decision that had been issued years earlier. And mind you, the district court had denied a request for Rule 54B certification, clearly telling the plaintiff and the parties that there would need to be a final ruling on all the parties. But the Supreme Court has said multiple times that the finality rule is one of practice, not of formality. In other words, we have to look at what really is this really final or not, not just the magic words that are used by a party. And as I understand it, at the time that they filed the motion to dismiss without prejudice and the Rule 41A2 motion, the statute of limitations had expired and the other parties were essentially in bankruptcy proceedings and all claims had been released as part of the bankruptcy proceedings. In other words, there was nothing left. Why was it not final at that point? Those are arguments that could and were made in the first appeal. And is that the answer, that we're stuck with what the first panel decided? Well, it's the law of the case, certainly. In other words, if something had changed between the time that the first appeal was dismissed and now, there might be an argument to say that there's now something new for this court to consider. But instead, what we have is the same arguments that could and should have been made in the first appeal. In fact, there was a motion for reconsideration on these issues that was denied. The State Treasurer v. Barry case sets out, I think, good reasoning for applying the Ryan Rule, but it also says that the decisions that are made in litigation often have different types of consequences and that these are issues that the litigants need to take into consideration at each turn. So what we would say is that, yes, it did not accomplish what the plaintiffs wanted, which was to manufacture appellate jurisdiction. So it, in fact, served the purpose in this case that it was intended to serve, which is to prevent the litigants from circumventing the denial of Rule 54B certificate by dismissing all other parties without prejudice. I think that the option of returning to the district court with a motion to reopen is where not the whole action was dismissed, but where a claim was dismissed. I mean, Rule 41 is not a dismissal of a claim. Rule 41 is dismissal of an action, and that's why we think that in this circumstance, the University of South Alabama case that I mentioned and that the district court cited are applicable. So for those reasons, we would say that they cannot reach the merits here. There is also a procedural argument that we raised, which is that the plaintiff or the appellant in this court did not raise the abuse of discretion in their opening brief and instead said that the motion to reopen was a final judgment and then proceeded to argue the merits of the case. So it was not until we had asserted that in the response brief that they then addressed that in the reply brief. So we would say that they have not appropriately challenged the district court's discretion under the rules that apply in the circuit court. I don't agree with you on that in terms of preservation, at least in my reading of the brief, but I guess my question is, does it matter? In other words, let's assume the trial court did abuse its discretion. Do we have jurisdiction to review that? And our position is clearly no. Right, so that's really the issue. Yes. Counsel, this is Lisa Branch. What bearing, if any, does our case, our 2018 case, Perry v. Schumacher, Group of Louisiana, have on this case? I must confess to you that I don't have that case at my fingertips. If you want to give me a hypothetical, perhaps, I'd be able to answer it better. Yes, and I'll give you the site, too. 891F3R954, and in that, we reversed the district court's finding that it didn't have jurisdiction to entertain a motion to enter a final judgment following a Rule 41A dismissal. And we have a footnote, footnote 3, that talks about how the plaintiff in that case was fortunate through error to avoid the finality trap of Ryan. I'm sorry, was fortunate through what? Fortunate through an error made by plaintiff's counsel had sort of stumbled into a way around the finality trap that is presented by Ryan. Well, I would have to look at the particulars of that case, Your Honor. I apologize for not being familiar with it. But what I can say is that on the record here, where there was a motion to certify under Rule 54B, that was denied. It was dismissal of the case without prejudice. That was appealed. The previous panels already ruled on the application of Ryan. These are arguments that I think could have been made previously and were not. I understand, I guess what I'm extrapolating from the court's description of the case is that there was some subsequent proceeding where the district court had denied motion to reopen or something of that sort. What I would say is that, as Judge Carnes had indicated in the earlier part of this argument, there's a finality requirement. And at what point can they go back and resurrect jurisdiction that had been destroyed by their own conduct? The appellant did not at all address the merits of the case. I do have comments about those. I don't know if that's something that I should address at this point. Let me just say briefly that under the so-called Good Samaritan Rule, of course, there needs to be an undertaking of services that are necessary to protect third parties. I would like to read just the documents into the record, document 189-28, 189-35, 189-36. What these documents reflect is a growing discomfort by... Can I... Yes. I'll let you run a little bit because I thought you didn't have much time, but generally our rule is, and it's universally applied, is that if the appellant doesn't... I'm sorry, if the appellee doesn't discuss something in its argument, you can't use your reply to bring it up for the first time and discuss it yourself. So we'll call your time on that. Okay. Thank you for the argument both sides. Appreciate it. We'll take that case under submission, and we're going to recess for the day. Judge, I think we need a rebuttal. I think we have to, yeah, rebuttal. Well, that's rather ironic, Mr. Davis, since you tried to give your argument earlier and I insisted that you wait for a rebuttal. Your Honor, and as a matter of fact, our rebuttal will be handled by Ms. Hashimi. Ms. Hashimi, I would analogize that to the jurisdictional trout. Maybe that's the oral argument trout. Having said that, Ms. Hashimi, if you would, two minutes for reply. Okay, yes, Your Honor. I'll try to be quick. First, Canal and Shelley's lawyer is trying to impermissibly cure the jurisdictional defect, and really it's more than that because it's missing jurisdictional allegations entirely. By asking for this court to go back to the time of removal and dismiss Faustino Jimenez, that would impermissibly lighten their burden of establishing jurisdiction existed at the time of removal, and that's under the case of Caterpillar. When there hasn't been a jury determination, a jury verdict here, the court has no compelling reason to uphold this grand summary judgment that maybe the district court never had jurisdiction in the first instance to decide. And lastly, the court asked why, if the district court may have gotten it wrong, why should we not be able to appeal? And I just want to point again that the district court indicated that if it had not erroneously determined that it lacked the power or a mechanism here to convert the dismissals, the district court indicated that it was sympathetic to plaintiff's situation and did acknowledge that the statute of limitations argument that the status of the defendant prevented further pursuit of these claims and that it wanted to provide some relief, but it wrongly held that it didn't think it had to because under Perry, the district court retained jurisdiction when a premature appeal is made. Thank you, Your Honors. Thank you, Counsel. Now we will take that case under submission and we'll stand in recess until tomorrow. Thank you, Your Honor.